Irina Shpigel (ishpigel@iselaw.com)
SHPIGEL & ASSOCIATES, P.C.
110 Wall Street, Suite 4-054
New York, New York 10005
(212) 390-1913
*Attorneys for Plaintiff Kogsor Limited*

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KOGSOR LIMITED,<br><br>  Plaintiff,<br><br> - against-<br><br>NATIONAL WESTMINSTER BANK, a foreign banking association<br><br>  Defendants. | Civil Action No. : 17-Civ- 5410<br><br>**COMPLAINT<br>AND DEMAND FOR JURY TRIAL** |

Plaintiff, KOGSOR LIMITED (hereinafter referred to as "Kogsor"), by and through undersigned counsel, alleges upon information and belief the following against Defendants NATIONAL WESTMINSTER BANK (hereinafter referred to as "NatWest") and in support thereof states as follows:

**PRELIMINARY STATEMENT**

1. On November 16th, 2016 Kogsor initiated a SWIFT-based wire transfer to its account in National Westminster Bank (NatWest) in the amount of 1,893,333.08 Euro ($2,121,428.02USD), the funds were never transferred to his account and NatWest has failed to cooperate in locating

1

and recovering the missing funds and have failed to explain how the funds went missing.

2. The funds earmarked for deposit into Kogsor's account with National Westminster Bank were instead deposited in an unidentified third-party account and then forwarded to another bank by immediate wire transfer. The whereabouts of the funds are currently unknown.

3. Kogsor made due demand for its funds upon NatWest, to date NatWest has not refunded Kogsor's money nor offered an explanation for how Kogsor's funds were deposited into a third-party account instead of Kogsor's account.

4. The egregiously negligent and/or fraudulent actions of the Defendants have caused great financial damage to Kogsor.

5. As a result this action follows and Kogsor bring claims against NatWest for unlawful conversion, fraud, violations of the Computer Fraud and Abuse Act (18 U.S.C. §1030(a)(2)(A)), and breach of fiduciary duty.

## THE PARTIES

6. Plaintiff Kogsor is a for-profit corporation, headquartered in the Bahamas, which conducts ordinary business in this District. Kogsor is an investment company, which invests heavily in the United States.

7. Defendant NatWest is a banking association and financial services company based in the United Kingdom which conducts ordinary business in this District. NatWest maintains an office in this District, located at 350 5th Avenue, New York, NY 10118.

8. Upon information and belief, Defendant Ben-Ezra is an individual citizen of Israel and resides at Ha Nasi Yitshak Ben Cvish 165 Herceliya Pituah, Israel.

## JURISDICTION AND VENUE

9. This Court has personal jurisdiction over Defendant because NatWest maintains an office in this District, conducts ordinary business here, and upon information and belief, some (if not all) of the business dealings in furtherance of Defendants' fraudulent actions in furtherance of financial gain occurred in this District.

10. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1332 and 28 U.S.C. §1331.

11. Venue is proper in this forum pursuant to 28 U.S.C. §1391 because Defendant conducts business in this Jurisdiction.

## RELEVANT FACTUAL BACKGROUND

12. Kogsor has operated as an international for-profit investment company headquartered in the Bahamas, since November of 2011.

13. Kogsor invests significantly in United States markets.

14. In early-2012, Kogsor opened a corporate bank account with Winterbotham Merchant Bank of the Bahamas.

15. In or around November of 2016, Kogsor decided to switch banks and to close its account with Winterbotham Merchant Bank.

16. In order to assist in the transfer of corporate accounts, Kogsor hired Mr. Bareli as a consultant. Mr. Bareli is experienced in the international banking field and has knowledge of various compliance requirements which accompany large international transfers of funds.

17. In this capacity, Mr. Bareli advised Kogsor to open accounts with two financial institutions: NatWest and Silk Road Bank, and to transfer its funds to the newly opened

accounts.

18. Kogsor received account opening letters from both financial institutions.

19. On or about November 16, 2016, Kogsor received letters from Silk Road Bank and Nat West confirming that Kogsor accounts were opened in each of the banks. The letter from NatWest confirmed that NatWest has opened a bank account for Kogsor and included Kogsor's NatWest account number and wire instructions to initiate a transfer of its funds.

20. On the same day as receipt of the abovementioned letters, Kogsor initiated a SWIFT-based wire transfers of funds to both National Westminster Bank and Silk Road Bank.

21. Kogsar initiated a SWIFT-based wire transfer of funds totaling 1,893,333.08 Euro ($2,121,428.02USD) to be transferred into their new account with NatWest.

22. The wire transfers were successfully completed without error to Silk Road Bank.

23. However, the wire transfers to NatWest bank earmarked for deposit into Kogsor's new account were deposited in an unidentified third-party account and then forwarded to another bank by immediate wire transfer.

24. The Society for Worldwide Interbank Financial Telecommunication (SWIFT) provides a network that enables financial institutions worldwide to send and receive information about financial transactions in a secure, standardized and reliable environment.

25. SWIFT payments are a type of international transfer sent via the SWIFT international payment network and the SWIFT international payment network is one of the largest financial messaging systems in the world.

26. Said SWIFT-based wire transfer to its NatWest account was marked "TRANSFER TO OWN ACCOUNT IN ANOTHER BANK."

27. Said notation should have prevented the funds from being routed to ANY third-party

account. Additionally, as per international banking regulations, any acceptance of such a significant amount of funds requires in-depth compliance checks on the part of the corresponding bank (here Winterbotham Merchant Bank) and the receiving bank (NatWest).

28. After a short period of interaction with NatWest, Kogsor learned that all of its funds had landed in an unidentified third-party account, and then forwarded to another bank by immediate wire transfer.

29. NatWest has failed to provide any reasonable explanation for how the unauthorized and illegal conversions occurred.

30. On or about February 1, 2017, and after several months of non-responsiveness from NatWest, Kogsor met with NatWest officials in London. Said officials, which included compliance and payment department representatives within NatWest were provided all relevant documentation related to the wire transfer.

31. NatWest confirmed on February 1, 2017 that they had indeed "received the wire transfer funds from the corresponding bank."

32. NatWest represented that the funds were processed and applied to the Kogsor account based on the matching International Bank Account Number ("IBAN").

33. NatWest then represented that the funds were shortly afterwards sent to another account outside of NatWest (again with a matching IBAN). NatWest however, failed to provide any identifying information as to the account owner.

34. The payment instructions on the wire transfer, initially sent to NatWest, clearly indicated that funds were to be sent to Kogsor and NOT to any third-party. When asked why this notation was intentionally ignored by NatWest, NatWest failed to provide any clear answer or explanation.

35. Upon information and belief NatWest has a history of customer's payments going "missing" due to technical glitches in its system. NatWest has been plagued by technical glitches and IT failures in the past. For example in 2012 NatWest was among three banks that were fined £65 million by regulators after computer system failures prevented millions of customers from accessing their accounts. In 2015, 600,000 customers were effected by another computer glitch wherein incoming wires and payments went missing.

36. As a direct result of Defendants' negligent and/or wrongful and fraudulent actions, Kogsor has been financially damaged.

## COUNT I
## VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT
## (18 U.S.C. §1030(a)(2)(A)

37. Kogsor reasserts and incorporates by reference the allegations in Paragraphs 1 through 36 above.

38. Kogsor brings this claim under the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. §1030, et seq.

39. Specifically, 18 U.S.C. §1030(a)(2)(A) provides that it is a violation of the CFAA to: "intentionally accesses a computer without authorization or exceeds authorized access, and thereby obtains—information contained in a financial record of a financial institution…"

40. Defendants obtained financial information from Kogsor.

41. Defendants unlawfully utilized Kogsor's financial information for their own material benefit.

42. Defendants exceeded their authorized access to Kogsor's financial information for the purpose of transferring funds to a third-party.

43. Kogsor never provided any authorization to Defendants to transfer funds to any third-

party accounts.

44. As a direct result of Defendants' willful violation of the CFAA, Kogsor has been financially damaged.

## COUNT II
## UNLAWFUL CONVERSION OF PROPERTY

45. Kogsor reasserts and incorporates by reference the allegations in Paragraphs 1 through 44 above.

46. Defendant caused the transfer of Plaintiff's funds in the amount of 1,893,333.08 Euro ($2,121,428.02USD), into unauthorized third party accounts.

47. Defendant had an obligation to return Plaintiff's funds after due demand, after Defendant was notified that Plaintiff's funds were missing.

48. By virtue of the improper taking and retention of property and payments which belong to Plaintiff, Defendant has, without authorization, asserted dominion and control over the funds which are the specifically identifiable property of Plaintiff and are or were the property of Plaintiffs and which were owned or payable to Plaintiff.

49. Defendant's conversion is inconsistent with Plaintiff's rights and ownership to said property.

50. The payments and property wrongfully converted by Defendant is specific and identifiable.

51. By virtue of Defendants' repeated and continued misappropriation and conversion of Plaintiff's property, they have caused Plaintiff substantial damage.

52. By virtue of Defendants' repeated and continued failure to return Plaintiff's funds (Plaintiffs' property), they have caused Plaintiff substantial damage.

53. Plaintiff has made a demand for the return of its property, but the funds have not been returned.

54. Upon information and belief, Defendant materially benefitted from the conversion.

55. Kogsor has repeatedly made demand upon NatWest for the return of its transferred funds.

56. As a direct result of Defendants' willful conversion of the transferred funds, Kogsor has been financially damaged.

## COUNT III
## FRAUD

57. Plaintiffs reassert and incorporate by reference the allegations in Paragraphs 1 through 56 above.

58. Defendants falsely represented to Kogsor that its funds transfer would be secure.

59. NatWest knew that it had no authority to authorize a transfer out of Kogsor's corporate account without Kogsor's express permission to do so.  The wire transfer which is the subject of this action was clearly marked as "TRANSFER TO OWN ACCOUNT IN ANOTHER BANK."

60. Kogsor reasonably relied upon the representations of NatWest.  NatWest is a global financial institution and Kogsor had no reason to believe, based in part on the account opening letter it received, that anything would be nefarious in transferring funds to its new account with NatWest.

61. Upon information and belief Defendant intended to defraud Kogsor.

62. NatWest, at the very least allowed, at the very worst perpetrated the unauthorized and illegal transfer of Kogsor's funds into an unidentified third-party account.  Since the transfer of funds in November of 2016, NatWest has failed to adequately respond and explain their actions in relation to this matter.

63. As a result of relying on NatWest's representations, Kogsor has been financially damaged.

## COUNT IV
## BREACH OF FIDUCIARY DUTY (Defendant NatWest)

64. Kogsor reasserts and incorporates by reference the allegations in Paragraphs 1 through 63 above.

65. A fiduciary relationship existed between Kogsor and NatWest.

66. As a financial institution, NatWest owed a duty to Kogsor to ensure the safety and security of its corporate accounts and funds held in said accounts on behalf of Kogsor.

67. Kogsor transferred funds (via deposit) into its NatWest corporate account. As recognized by law, a deposit is a debt from the bank to the depositor.

68. NatWest, as fiduciary, had a duty to act in Kogsor's best interest by ensuring that any deposited money is kept aside for safe keeping and instant access.

69. Additionally, NatWest had a duty to follow Kogsor's wire transfer instructions which clearly stated that transferred funds were to be placed in Kogsor's own account and not subsequently transferred to an unidentified third-party account.

70. NatWest breached its duty to Kogsor by at the very least allowing, at the very worst perpetrating the unauthorized and illegal transfer of Kogsor's funds into an unidentified third-party account.

71. NatWest breached its duty to Kogsor by not ensuring the safety and security of Kogsor's funds by allowing the illegal transfer of Kogsor's funds into an unidentified third-party account to occur, in spite of in-depth compliance checks in place regarding the transfer of a significant amount of funds.

72. As a proximate result of NatWest's willful breach of its duty, Kogsor has been financially

damaged.

## PRAYER FOR RELIEF

**WHEREFORE**, Kogsor requests that this Honorable Court enter judgment against Defendant as follows:

(1) In an amount of compensatory damages of 1,893,333.08 Euro ($2,121,428.02USD);

(2) In an amount of statutory punitive damages in an amount to be determined at trial; and

(3) An award of attorneys' fees and costs, as allowed by law;

(4) An award of pre-judgment and post-judgment interest, as provided by law;

(5) Leave to amend this Complaint to conform to the evidence produced at trial; and

(6) Such other relief as may be appropriate under the circumstances deemed just and proper.

## DEMAND FOR JURY TRIAL

Kogsor hereby demands a jury trial on all triable issues.

Dated: New York, New York
       July 14th, 2017

                                      Respectfully Submitted,

                                      SHPIGEL & ASSOCIATES, PC

                                      By:     */s/ Irina Shpigel*
                                            Irina Shpigel
                                            110 Wall Street
                                            New York, New York
                                            T: (212) 390-1913
                                            F: (646) 355-0242
                                            E: ishpigel@iselaw.com